IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIM MANZOLILLO, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION** |
| | **COMPLAINT** |
| vs. | |
| | **DEMAND FOR JURY TRIAL** |
| ONTEL PRODUCTS CORPORATION, a New Jersey Corporation, | |
| Defendant. | |

Plaintiff Kim Manzolillo ("Manzolillo" or "Plaintiff"), individually and on behalf of all other similarly situated purchasers (the "Class") brings this Complaint against Ontel Products Corporation ("Ontel" or "Defendant") in connection with false, misleading, deceptive, and unlawful marketing and sales practices.

## INTRODUCTION

1.     Ontel Products Corporation is known for marketing, selling, and distributing hundreds of millions of dollars in "as seen on tv" consumer products annually. Defendant sells the majority of its products through a series of direct-to-consumer ("DTC") ecommerce websites. To increase profits at the expense of

unsuspecting consumers and fair competition, however, Defendant pioneered a new "bait-and-switch" scheme which offers a product at a low price (the "bait"), and then tricks consumers into paying for additional units of that product and "add-on" features they never intended to buy, did not want, and did not authorize (the "switch"). Defendant executes this bait and switch scheme by way of subtle, hidden, confusing, deceptive, and misleading features woven throughout the ordering process on its ecommerce websites. This massive marketing con comprises a substantial portion of Defendant's enormous revenues.



2.     Defendant's misleading, deceptive, and unlawful acts extend to numerous products, including but not limited to: Micro Mechanic, Huggle™ Hoodie, Magic Pad, Arctic Hat™, Turbo Pump™, Piggy Pop, Arctic Air™ Ultra, Arctic Air™, Arctic Air™ Freedom, Chill Chest™, Dust Daddy™, Measure King™, Night Hawk™, Tiger Wrench™, Dream Tents™, Magic Tracks®, Thermapulse™ Relief Wrap, Miracle Teeth Whitener™, Miracle Mist™ Breathe

Easy, Wonder Arms™, Turbo Scrub™ 360, Ever Brite™, Veggetti™, Speed Out™, Simply Strait®, Miracle Bamboo®, Safe & Healthy™ (the "Products").

3.      In each and every instance of the Products' ecommerce websites, Defendant uses ambiguous and confusing language to describe the terms of promotional offers, which tricks consumers into inadvertently placing orders for a greater quantity of Products than they intend.

4.      Defendant fails to provide consumers with an opportunity to confirm or edit their order at the end of the ordering process to ensure its accuracy, thereby failing to obtain consumers' informed consent to the charges.

5.      Defendant captures consumers' billing information early in the sales process and fails to advise consumers that Defendant will process their order before providing them with order details.

6.      Defendant includes "upsell" offers that do not clearly inform consumers of the total cost before accepting the offer. Because of Defendant's misrepresentations and misleading "upsell" offers, consumers consistently pay more than they were expecting to pay based on Defendant's misrepresentations.

7.      Upon purchase of the Product, Defendant misleads and confuses consumers by having the selection "Yes! I'd like to DOUBLE my offer for just an additional $9.95," preselected, rather than allowing the consumer to choose the

selection.  Consumers are charged an extra $9.95 plus applicable shipping costs for products they never intended to purchase and did not want.



8.     Defendant fails to clearly state the order quantity during the online sale process, thereby depriving consumers of the opportunity to understand how many individual units of the Products they are ordering.

9.     Defendant's false, misleading, deceptive, and unlawful advertising practices described herein violate the New Jersey Consumer Fraud Act and the common law.

## PARTIES

10.    Plaintiff Kim Manzolillo is an individual residing in Manalapan, NJ. Plaintiff purchased the Product in Manalapan in 2020 via Defendant's DTC website. In making her purchase, Plaintiff fell victim to Defendant's deceptive marketing and sales tactics described herein. Specifically, Plaintiff unknowingly ordered two times as many Micro Mechanic Products due to Defendant's pre-selection of the "double offer." Plaintiff was charged an extra $9.95. Plaintiff would not have purchased the Product if she knew she would be subjected to deceptive "upselling" of additional Product she did not want and did not intend to pay for. If the Product's advertising, labeling, and marketing were not misleading, then Plaintiff may purchase the Product in the future.

11.    Ontel Products Corporation is a New Jersey corporation headquartered in New Jersey. Defendant maintains its principal place of business at 21 Law Dr., Fairfield, NJ 07004. Defendant directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of New Jersey. Defendant is the owner, manufacturer, distributor, advertiser, and seller of the Products, and is the company that created and/or authorized the false, misleading, deceptive, and unlawful advertising, marketing, and sales tactics for the Products.

12.     In committing the wrongful acts alleged herein, Defendant planned and participated in and furthered a common scheme by means of false, misleading, deceptive, and fraudulent marketing and sales tactics to induce members of the public to purchase and pay hidden fees for the Products. Defendant participated in the making of such representations in that it did disseminate, or cause said misrepresentations, to be disseminated.

13.     Defendant, upon becoming involved with the advertising and sale of the Products, knew or should have known that its marketing and sales tactics related to the Products were false, deceptive, misleading, and unlawful. Defendant affirmatively uses deceptive tactics in its website advertisements in order to lure consumers into both purchasing its Products, and paying more money for add on Products they never intended to purchase, resulting in profits of millions of dollars or more to Defendant, all to the damage and detriment of the consuming public.

14.     Defendant's consistent and uniform marketing and sales tactics related to the Products are fraudulent, deceptive, unlawful, and misleading in violation of New Jersey advertising laws.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. Section 1332, because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy

exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

16.     Pursuant to 28 U.S.C. Section 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff is a citizen of New Jersey who resides in Monmouth County; Defendant made the challenged false representations to Plaintiff in this District; and Plaintiff purchased the Product in this District. Moreover, Defendant receives substantial compensation from sales in this District, and Defendant made numerous misrepresentations which had a substantial effect in this District, including but not limited to Internet and infomercial advertisements, among other advertising.

17.     Defendant is subject to personal jurisdiction in New Jersey based upon sufficient minimum contacts which exist between Defendant and New Jersey. Defendant is authorized to do and is doing business in New Jersey.

## FACTUAL BACKGROUND

18.     Defendant has pioneered a deceptive marketing and advertising scheme to profit off of misleading "upsell" offers. Defendant's deceptive and confusing

ordering and check-out scheme not only harms consumers, it stifles competition from honest businesses who follow the law and play by the rules.

19.    Defendant primarily sells the Products online on its DTC website. Defendant's Products also appear in over 80,000 retail stores, in over 30 countries worldwide.

20.    One of the Products Defendant sells through a DTC website is the Micro Mechanic™ engine code reader ("Micro Mechanic"). The ordering process on this website is riddled with deceptive and misleading features.

21.    For example, the Micro Mechanic home page has an image that states, "DOUBLE OFFER," accompanied by small fine print that informs consumers of a "separate fee" amount, which consumers eventually find out is $9.95 plus hefty shipping charges.



22.    The net impression of "DOUBLE OFFER" is that consumers buy one Micro Mechanic and get a second Micro Mechanic free, or for a nominal fee.

23.    The Micro Mechanic home page also contains two conspicuous red buttons stating, "Order Now." After a consumer clicks these buttons, they are redirected to the Micro Mechanic ordering page, where they are immediately prompted to submit contact and billing information.

24.    The ordering page has an option stating "Yes! I'd like to DOUBLE my offer for just an additional $9.95" pre-selected. Consumers must unselect this option to avoid paying $9.95 more every time they order.





25.     Defendant's "DOUBLE OFFER" marketing scam extends to several of the Products. For example, Defendant's "Piggy Pop" home page attempts to deceive consumers in the same manner as the Micro Mechanic home page.[1]

26.     The ordering page is followed by additional webpages prompting consumers to purchase supplementary products and/or to upgrade the current version of the product selected. These subsequent webpages have additional charges pre-selected, and consumers must intentionally opt out of these additional charges.



---

[1] *See* Defendant's official website https://www.buypiggypop.com// (last visited January 8, 2021).

27.     When consumers are ready to review their items and potential charges, they are directed to click a "Process Order" option. But rather than having the opportunity to review their order, consumers are tricked into confirming their order without reviewing their items or charges. When consumers click the "Process Order" button, their order is immediately completed, even before they can review and edit their order, which is atypical for the DTC sales industry.



28.     Rather than directing consumers to a page that details the order, Defendant redirects consumers to another page that contains advertising and promotions for the Micro Mechanic product. Consumers must click through several different pages, all of which contain various promotional offers, to get to the order confirmation page that states, "Thank you. Your order is complete."

29.     Defendant's purchase confirmation page does not give the consumer the opportunity to edit or cancel their order. Nor does the page display a phone number for consumers to call if they would like to edit or cancel their order. If a consumer does not click through every single promotional offer, they never see the confirmation page and would reasonably believe they never placed their order. This is problematic because Defendant has already collected the consumer's financial information and processed the sale.

30.     Plaintiff unknowingly fell victim to Defendant's "DOUBLE OFFER" scheme. Plaintiff was charged an extra $9.95 plus shipping charges for a product that she did not wish to purchase. Plaintiff did not notice the overcharges until after she had paid for the Products and her bank account was debited for the order.

31.     Defendant uses the "DOUBLE OFFER" promotion to generate a financial windfall while deceiving consumers into believing that the promotion is legitimate and fair. Defendant's misleading and deceptive practice of tricking consumers into additional charges is deceptive and unfair.

32.     Defendant utilized, and continues to utilize, these deceptive and misleading features on its websites. Compliance with remedial statutes, like those underlying this lawsuit, will benefit Plaintiff, the putative class, consumers, and the general public.

33.    Plaintiff and the Class Members have accordingly suffered injury in fact and ascertainable loss caused by the false, fraudulent, unfair, deceptive, unlawful, and misleading practices set forth herein, and seek injunctive relief, as well as, *inter alia*, compensatory damages, statutory damages, punitive damages, treble damages and restitutionary damages.

## CLASS ACTION ALLEGATIONS

34.    Plaintiff brings this action on her own behalf and on behalf of all other persons similarly situated. The Class which Plaintiff seeks to represent comprises:

> "All persons who purchased the Products via Defendant's direct to consumer website or telephone ordering system in the United States or, alternatively, the State of New Jersey, for personal use and not for resale during the time period of six years prior to the filing of the complaint through the present."

Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

35.    The Class is comprised of many thousands of persons. The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

36.    There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented in that the Class was exposed to the same common and uniform false, misleading, and unlawful advertising as well as deceptive marketing tactics. The questions of law and fact common to the Class

predominate over questions which may affect individual Class members. Common questions of law and fact include, but are not limited to, the following:

    a.  Whether Defendant's conduct as alleged herein is violative of the Uniform Deceptive Trade Practices Act, No. § 56:8-1, *et seq*.;

    b.  Whether Defendant knowingly sold the Products to Plaintiff and members of the Class in a manner that was unfair, unconscionable, and oppressive;

    c.  Whether Defendant knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Class;

    d.  Whether Defendant's deceptive marketing scheme alleged herein causes or is likely to cause reasonably foreseeable injuries;

    e.  Whether Defendant intentionally made misrepresentations that induced the class to pay more for the Products than they otherwise would have; and

    f.  Whether Defendant negligently made misrepresentations that induced the class to pay more for the Products than they otherwise would have.

37.    Plaintiff's claims are typical of the claims of the proposed Class, as the representations and omissions made by Defendant are uniform and consistent and are contained in online advertisements that were seen and relied on by Plaintiff and members of the Class.

15

38.     Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

39.     Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false, deceptive, misleading, and unlawful marketing tactics.

40.     The Class is identifiable and readily ascertainable. Defendant maintains the contact information for all of its online purchasers, so Class Notice can be effectuated via direct email and/or mail notice.

41.     A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed members of the Class to prosecute their claims individually.

42.     The trial and the litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

43.     Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendant.

44.     Absent a class action, Defendant will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class members will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

<u>**COUNT ONE**</u>

**VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT**

**N.J.S.A. Section 56:8-1, *et seq.***

45.     Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

46.     This cause of action is brought pursuant to New Jersey Statute Annotated Section 56:8-1, *et seq.*, the New Jersey Consumer Fraud Act ("CFA"), on behalf of a Class consisting of "All persons who purchased the Products via

Defendant's direct to consumer website or telephone ordering system in the United States or, alternatively, the State of New Jersey, for personal use and not for resale during the time period of six years prior to the filing of the complaint through the present."

47.    The CFA, N.J.S.A. § 56:8-2 states "…[a]ny unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise … whether or not any person has in fact been misled, deceived or damaged thereby … is declared to be an unlawful practice…"

48.    If a person suffers "any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under" the CFA, they "may bring an action . . . therefor in any court of competent jurisdiction" for "legal or equitable relief" "sustained by any person in interest," pursuant to N.J.S.A. § 56:8-19.

49.    The practices described herein, specifically Defendant's deceptive advertising and sale of the Products, were intended to result, and did result in the sale of the Products to the consuming public, and violated and continue to violate the CFA by (1) engaging in an unlawful practice using deceptive representations in

connection with the Products; (2) resulting in an ascertainable loss to Plaintiff and the Plaintiff's Class; and (3) the unlawful conduct created the ascertainable loss.

50.    Defendant's conduct, as alleged herein, constitutes unfair, fraudulent and/or deceptive trade practices prohibited under the CFA.

51.    Defendant fraudulently deceived Plaintiffs and the Class, and intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

52.    Defendant knew or should have known, through the exercise of reasonable care, that its deceptive advertising and sales practices were deceptive to Plaintiff and the Class.

53.    Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights, and Defendant was wanton and malicious in its concealment of the same.

54.    Defendant intended for Plaintiff and the Class to rely on the deceptive conduct alleged herein by including subtle, hidden, confusing, deceptive, and misleading features throughout the ordering process on its ecommerce websites.

55.    Defendant employed deceptive and strategic marketing tactics to induce members of the public to purchase and pay hidden fees for the Products. Defendant, in the pursuit of profit, created an unreasonable injury to its consumers.

56.     Defendant knew or should have known of its unfair conduct.

57.     Consumers cannot avoid any of the injuries caused by Defendant's actions.

58.     Defendant's misleading and deceptive conduct alleged herein has no utility and financially harms purchasers.

59.     Defendant's conduct alleged herein was a material factor in Plaintiff's and the Class's decisions to purchase the Products. Defendant's conduct was intended to, and did, induce Plaintiff and the Class to pay for Products they never intended to purchase. The conduct alleged herein was a substantial factor in causing Plaintiff and the Class to spend more than they meant.

60.     At the time Plaintiff and the Class purchased the Products, they were unaware of the fact that they would immediately be purchasing extra Products. Plaintiff and the Class would not have purchased the additional Products but for Defendant's deceptive conduct alleged herein.

61.     Defendant's conduct alleged herein constitutes unconscionable commercial practices, deception, false pretenses, and/or knowing concealment, suppression, or omissions in connection with the marketing and distribution of merchandise, and were in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq*.

62.    The actions and omissions of the Defendant in connection with the marketing, promotion and sale as alleged herein, lack evidence of good faith, honesty in fact, and observance of fair dealing so as to constitute unconscionable commercial practices in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq*.

63.    There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the unfair conduct alleged herein. Defendant could have clearly stated its terms and offers and implemented a checkout process that was legally compliant. For example, Defendant could have avoided a hidden fee and upsell bait-and-switch scam and utilized an online check-out process that was clear and intuitive to consumers, like other DTC commerce websites do.

64.    All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's unfair conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

65.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct alleged herein.  These acts and omissions directly and proximately caused Plaintiff and the Class to suffer an ascertainable loss in the form of, *inter alia*, money spent purchasing additional Products by virtue of Defendant's fraudulent conduct, which Products Plaintiff and the Class did not want, as well as the at a premium paid for the Products due to the forced addition of other

Products as part of the transaction, together with all available remedies, including damages, treble damages, attorneys' fees, and costs of suit.

66.     The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

67.     Plaintiff seeks all available forms of relief provided under this statute, including damages and treble damages.

## COUNT TWO

### Restitution Based on Quasi-Contract/Unjust Enrichment

68.     Plaintiff repeats and realleges the allegations set forth above and incorporates the same as if set forth herein at length.

69.     Plaintiff brings this cause of action individually and on behalf of the members of the Class against Defendant.

70.     By means of Defendant's wrongful conduct alleged herein, Defendant knowingly sold the Products to Plaintiff and members of the Class in a manner that was unfair, unconscionable, and oppressive.

71.     Defendant knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Class. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Class.

72.    As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

73.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the deceptive and misleading conduct alleged herein.

74.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, without justification, from selling the Products to Plaintiff and members of the class in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under such circumstances constitutes unjust enrichment.

75.    The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Class. Defendant should be compelled to return in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by Defendant.

76.    Plaintiff and members of the Class have no adequate remedy at law.

## **COUNT THREE**

### **Intentional Misrepresentation**

77.    Plaintiff repeats and realleges all of the allegations contained above and incorporates the same as if set forth herein at length.

78.     Plaintiff brings this cause of action individually and on behalf of all members of the Class against Defendant.

79.     Defendant, through the deceptive and misleading features alleged herein, makes intentional misrepresentations about the Products.

80.     Defendant's misrepresentations regarding the Products are material to a reasonable consumer. A reasonable consumer would attach importance to such representations and would be induced to spend more money than if Defendant had not made the misrepresentations.

81.     At all relevant times when such misrepresentations were made, Defendant knew or should have known that the advertisements were misleading.

82.     Defendant intended for Plaintiff and the Class to rely on the deceptive and misleading features alleged herein.

83.     Plaintiff and members of the Class reasonably and justifiably relied on Defendant's intentional misrepresentations when purchasing the Products.

84.     As a direct and proximate result of Defendant's intentional misrepresentations, Plaintiff and members of the Class have suffered injury in fact.

## COUNT FOUR

### Negligent Misrepresentation

85.     Plaintiff repeats and realleges all of the allegations contained above and incorporates the same as if set forth herein at length.

86.     Plaintiff brings this cause of action individually and on behalf of the Class against Defendant.

87.     Defendant, through the deceptive and misleading features alleged herein, makes misrepresentations about the Products.

88.     Defendant's misrepresentations regarding the Products are material to a reasonable consumer. A reasonable consumer would attach importance to such representations and would be induced to spend more money than if Defendant had not made the misrepresentations.

89.     At all relevant times when such misrepresentations were made, Defendant knew or should have known that the advertisement was deceptive.

90.     Defendant intended for Plaintiff and the Class to rely on the deceptive and misleading features alleged herein.

91.     Plaintiff and members of the Class reasonably and justifiably relied on Defendant's misrepresentations when purchasing the Products.

92.     As a direct and proximate result of Defendant's misrepresentations, Plaintiff and members of the Class have suffered injury in fact.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment and relief on all Causes of Action as follows:

A.    An order enjoining Defendant from advertising and selling the Products in a fraudulent, deceptive, unfair, and unlawful manner, as challenged herein;

B.    Damages against Defendant in an amount to be determined at trial, together with pre- and post-judgement interest at the maximum rate allowable by law on any amounts awarded;

C.    Treble damages under the New Jersey Consumer Fraud Act;

D.    Restitution and/or disgorgement in an amount to be determined at trial;

E.    Punitive damages, if proven at trial;

F.    Pre-judgment interest from the date of filing this suit;

G.    Reasonable attorneys' fees and costs; and

H.    Such other and further relief as the Court may deem necessary or appropriate.

## <u>NOTICE TO ATTORNEY GENERAL</u>

A copy of this Complaint will be mailed to the Attorney General of the State of New Jersey within 10 days of filing pursuant to N.J.S.A. §56:8-20.

DATED: January 13, 2021

**SHEPHERD, FINKELMAN,
  MILLER & SHAH, LLP**

/s/Natalie Finkelman Bennett
Natalie Finkelman Bennett
James C. Shah
475 White Horse Pike
Collingswood, NJ 08107
Phone: 856-858-1770
Email:  nfinkelman@sfmslaw.com
      jshah@sfmslaw.com

**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson
(*phv.* application to be filed)
Matthew T. Theriault
(*phv.* application to be filed)
Zachary T. Chrzan
(*phv.* Application to be filed)
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

*Attorneys for Plaintiff*

27